# IN THE COURT OF APPEALS OF THE STATE OF MISSISSIPPI

## NO. 2016-KM-00606-COA

JOHN PAUL LONGEST A/K/A JOHN LONGEST        APPELLANT

v.

STATE OF MISSISSIPPI        APPELLEE

| | |
|---|---|
| DATE OF JUDGMENT: | 03/24/2016 |
| TRIAL JUDGE: | HON. WILLIAM E. CHAPMAN III |
| COURT FROM WHICH APPEALED: | RANKIN COUNTY CIRCUIT COURT |
| ATTORNEY FOR APPELLANT: | V.W. CARMODY JR. |
| ATTORNEYS FOR APPELLEE: | OFFICE OF THE ATTORNEY GENERAL BY: ABBIE EASON KOONCE BRENTON MATTHEW CARTER |
| DISTRICT ATTORNEY: | DAVID RINGER |
| NATURE OF THE CASE: | CRIMINAL - MISDEMEANOR |
| TRIAL COURT DISPOSITION: | CONVICTED OF DRIVING UNDER THE INFLUENCE, FIRST OFFENSE, AND SENTENCED TO FORTY-EIGHT HOURS IN THE RANKIN COUNTY JAIL, SUSPENDED UPON SPECIFIED CONDITIONS; SIX MONTHS OF UNSUPERVISED PROBATION; AND TO PAY A $750 FINE; AND TO PAY A FINE OF $750; AND CONVICTED OF DRIVING CARELESSLY, AND SENTENCED TO PAY A $50 FINE |
| DISPOSITION: | AFFIRMED - 05/02/2017 |
| MOTION FOR REHEARING FILED: | |
| MANDATE ISSUED: | |

**BEFORE LEE, C.J., ISHEE AND GREENLEE, JJ.**

**ISHEE, J., FOR THE COURT:**

¶1. In January 2015, John Longest was arrested for careless driving, open container in a motor vehicle, and driving under the influence (DUI). Longest pleaded no contest and was

convicted by the Municipal Court of Florence. He appealed his convictions to the County Court of Rankin County, wherein a bench trial de novo was held, and Longest was found guilty of careless driving and DUI. Longest moved for a judgment notwithstanding the verdict (JNOV), which the county court denied. Longest then appealed to the Rankin County Circuit Court, which affirmed. He now seeks relief from this Court. Finding no error, we affirm.

**STATEMENT OF FACTS AND PROCEDURAL HISTORY**

¶2. On January 23, 2015, Longest was stopped by Officer Kesha McBay of the Florence Police Department. Initially, McBay came upon Longest's Ford pickup partially stopped along the shoulder of Erlich Road in Florence, Mississippi. McBay stated that Longest's driver-side door was ajar, and as she approached his vehicle, the door closed and the vehicle began traveling toward U.S. Highway 49; Longest then entered onto Highway 49, going southbound.

¶3. McBay testified that after entering Highway 49, Longest "sped up very rapidly [and] swerv[ed] across the fog line to the right several times [and] then crossed the center line several times." After Longest's continuous swerving and possible endangerment to other vehicles, McBay initiated a traffic stop. After pulling over, Longest then exited his vehicle at the same time that McBay was exiting her patrol vehicle. McBay stated that as Longest exited his truck, he was grasping the door, and then "stumbled out of the vehicle" and into a traffic lane of Highway 49, but did not fall completely. McBay then radioed Sergeant Justin Holifield for assistance. McBay ordered Longest to reenter his vehicle, which he did.

2

¶4.    McBay next approached Longest's vehicle from the driver side, and instructed Longest to roll down the window.  McBay stated that Longest attempted to speak through the window, but that she could not understand him.  She further testified that Longest was attempting to reach his wallet when he first exited the vehicle, and was still continuing to try and do so at the time she ordered the window down.  After Longest rolled the window down, McBay stated she immediately experienced "a very strong odor of [an] intoxicating beverage."  When asked by McBay, Longest admitted to having three beers over the course of driving back from Vicksburg, Mississippi.  McBay testified that Longest's speech was extremely slurred, that she continuously had difficulty understanding him, and that she had to request him to repeat himself.  McBay also observed that Longest's eyes were bloodshot.  When asked by McBay to turn his vehicle off, Longest "kept fumbling and missing the ignition."

¶5.    McBay eventually ordered Longest out of his vehicle.  When Longest exited the vehicle, his pants were undone, exposing himself; he told McBay he was unaware his pants were not fastened.  McBay then had Longest walk to the back of his truck.  In doing so, he held onto the side of the truck for support.  McBay stated she had no trouble with her balance when standing or walking on the same surface and in the same direction.  When at the rear of his vehicle, McBay again asked how many beers Longest had consumed, to which he replied, "four."  Longest then admitted to McBay that he knew drinking and driving was illegal and that three beers were enough to charge him with DUI.  Longest was instructed to sit at the center of the bumper, which took several requests by McBay before Longest was

3

able to comply, stumbling in the process. Throughout the duration of McBay's encounter with Longest, she noted his slurred speech.

¶6. After Holifield arrived on scene, he initiated field sobriety testing on Longest. Holifield testified that he, too, could smell the odor of intoxicating liquor emanating from Longest's breath when speaking. Longest also admitted to Holifield he had consumed four beers. Like McBay, Holifield observed that Longest's eyes were "glassy and red." Holifield proceeded to perform the horizontal-gaze-nystagmus (HGN) test, which he testified illustrated the following: "[C]lues of impairment as far as lack of smooth pursuit, distinct and sustained nystagmus at maximum deviation, the onset of nystagmus prior to [fourty-five] degrees, and [Longest] also showed vertical nystagmus." These conclusions resulted in Longest's failure of the HGN test. Holifield then had Longest perform the walk-and-turn test. Holifield, however, ended the walk-and-turn test prematurely for fear that Longest would injure himself due to lack of balance. Longest was then arrested and charged with careless driving, open container in a motor vehicle, and DUI. At the jail where he was taken, Longest took a breathalyzer test, which resulted in an "[i]nsufficient [s]ample."

¶7. At trial, Longest's wife testified on his behalf. She stated that Longest's lack of balance was the result of a right-knee injury. She further stated that Longest was "hard of hearing," which was why McBay and Holifield had to repeat commands. In addition, Longest's wife testified that Longest worked in the vicinity of petroleum products, which had the effect of causing redness in Longest's eyes. Lastly, she stated that Longest's vehicle needed considerable repairs, "drifted everywhere," and was likely the cause of Longest's

4

swerving.

¶8.    The county-court judge viewed McBay's dash-cam footage, and stated that the video of the traffic stop corroborated the testimony of McBay and Holifield. As a result, the County Court of Rankin County, sitting without a jury, found Longest guilty beyond a reasonable doubt for both careless driving and DUI. Longest then moved for a JNOV, which the county court denied. He appealed his convictions to the Rankin County Circuit Court, which affirmed. Longest now appeals the circuit court's judgment. Finding no error, we affirm.

## STANDARD OF REVIEW

¶9.    "In a bench trial, the trial judge is 'the jury' for all purposes of resolving issues of fact." *Carlson v. City of Ridgeland*, 131 So. 3d 1220, 1223 (¶13) (Miss. Ct. App. 2013) (quoting *Doolie v. State*, 856 So. 2d 669, 671 (¶7) (Miss. Ct. App. 2003)). As such, a "judge sitting without a jury is accorded the same deference with regard to his findings as a chancellor, and his findings are safe on appeal where they are supported by substantial, credible, and reasonable evidence." *Id.* (quotation omitted). In determining whether the judge possessed sufficient evidence upon which to base his judgment, "the relevant question is whether, after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." *Id.* at (¶14) (quoting *Bush v. State*, 895 So. 2d 836, 843 (¶16) (Miss. 2005)).

## DISCUSSION

¶10.    On appeal, Longest asserts that the State failed to provide sufficient evidence of his

impairment at the time of his arrest, and therefore, the verdict is against the overwhelming weight of the evidence. We disagree.

¶11. "A challenge to the sufficiency of the evidence requires this Court to determine whether the evidence shows 'beyond a reasonable doubt that [the] accused committed the act charged, and that he did so under such circumstances that every element of the offense existed[.]'" *Nolan v. State*, 182 So. 3d 484, 488-89 (¶7) (Miss. Ct. App. 2016) (quoting *Bush*, 895 So. 2d at 843 (¶16)). Evidence is deemed "insufficient to support the verdict where 'the facts and inferences . . . point in favor of the defendant on any element of the offense with sufficient force that reasonable [jurors] could not have found beyond a reasonable doubt that the defendant was guilty[.]'" *Id.* The evidence must be viewed in the light most favorable to the State. *Id.*

¶12. Longest was convicted under common-law DUI. Common-law DUI is set forth under Mississippi Code Annotated section 63-11-30(1)(a) (Supp. 2016), and makes it "unlawful for a person to drive or otherwise operate a vehicle within this state if the person . . . [i]s under the influence of intoxicating liquor." "Common-law DUI is proven when a defendant's blood[-]alcohol results are unavailable but there is sufficient evidence to [show] that the defendant operated a motor vehicle under circumstances indicating his ability to operate the vehicle was impaired by the consumption of alcohol." *Nolan*, 182 So. 3d at 488-89 (¶8) (quoting *Young v. State*, 119 So. 3d 309, 315 (¶19) (Miss. 2013)).

¶13. At trial, McBay and Holifield both testified that Longest exhibited many traits of a person experiencing the effects of impairment due to an intoxicating liquor. Again, the

6

following was introduced into evidence by the State through testimony: that Longest was observed swerving between lanes, and over the center lane and fog line; that he stumbled into a traffic lane after exiting his vehicle; he was unaware that his pants were unfastened, exposing himself; he admitted to operating his vehicle while consuming alcohol; he emanated an odor of alcohol; he had glassy, bloodshot eyes and slurred speech; he experienced difficulty turning his vehicle off when instructed; he visibly lacked a sense of balance, resulting in unsteadiness on his feet; he failed the HGN test, and he was discontinued from completing the walk-and-turn test for safety reasons.

¶14. In addition to this testimony, the State offered into evidence dash-camera footage of the entire encounter. The county-court judge noted that he had watched the video, and found it to be "very confirmatory"of McBay and Holifield's statements, rendering their testimony credible and consistent. Longest, however, argues that the State failed to rebut his wife's testimony regarding the roadworthiness of his vehicle, and furthermore, that the county court failed to take into account any medical issues Longest may have been experiencing with his right knee during the traffic stop. We find these arguments without merit, as the record reveals otherwise.

¶15. At trial, the State's burden required it to prove beyond a reasonable doubt that Longest was operating his vehicle under the influence of an intoxicating liquor, resulting in impairment—not to disprove the vehicle's alleged lack of roadworthiness could result in the mistaken belief of an impaired driver. *See* Miss. Code Ann. § 63-11-30(1)(a). And as the State highlights, Longest did not offer any expert testimony regarding the issue of

7

roadworthiness; rather, Longest merely relied on his wife's lay testimony, as well as an invoice of repairs done to his truck. Additionally, Longest did not provide any expert or medical evidence of his alleged knee injury. What is more, at no point during the traffic stop or field sobriety testing did Longest alert McBay or Holifield of his alleged knee ailment. And for Longest to assert that his wife's testimony regarding his knee injury was not given proper weight by the county court is misplaced. In fact, the county-court judge stated on the record, "[H]aving watched the video, even though he may have a problem with his knee, from what I saw, knee problems were not the cause of his problem. Alcohol problems were the cause of his problems." Moreover, the court noted that, during the instruction phase before the walk-and-turn test, Longest exhibited no issues with his knee. As such, his alleged claim of injury was adequately considered by the county court, though it was found to possess no merit. We find likewise.

¶16. Thus, when reviewing the sufficiency of the evidence, this Court must view the evidence in the light most favorable to the State. *Bush*, 895 So. 2d at 843 (¶16). In doing so, we find there was substantial, credible, and reasonable evidence to sufficiently support the DUI conviction. Additionally, in Longest's motion to reconsider, which was treated as a JNOV motion, he did not explicitly move for a new trial—though he asserted the verdict was against the overwhelming weight of the evidence. Nonetheless, this Court "will only disturb a verdict when it is so contrary to the overwhelming weight of the evidence that to allow it to stand would sanction an unconscionable injustice." *Id.* at (¶18). Viewing the evidence in a light most favorable to the verdict, and based upon our finding regarding the

8

sufficiency of the evidence, we find Longest's conviction is not so contrary to the weight of the evidence that to allow it to stand would sanction an unconscionable injustice. As such, we affirm the findings of the circuit court.

## CONCLUSION

¶17. Upon review of the record, we find no merit to any of the issues raised on appeal by Longest. There was evidence sufficient to support his common-law-DUI conviction, and the verdict was not against the overwhelming weight of the evidence. Therefore, we affirm.

¶18. **THE JUDGMENT OF THE RANKIN COUNTY CIRCUIT COURT OF CONVICTION OF DRIVING UNDER THE INFLUENCE, FIRST OFFENSE, AND SENTENCE OF FORTY-EIGHT HOURS IN THE RANKIN COUNTY JAIL, SUSPENDED UPON SPECIFIED CONDITIONS; SIX MONTHS OF UNSUPERVISED PROBATION; AND TO PAY A $750 FINE; AND CONVICTION OF DRIVING CARELESSLY AND SENTENCE TO PAY A FINE OF $50, IS AFFIRMED. ALL COSTS OF THIS APPEAL ARE ASSESSED TO THE APPELLANT.**

**LEE, C.J., IRVING AND GRIFFIS, P.JJ., BARNES, CARLTON, FAIR, WILSON, GREENLEE AND WESTBROOKS, JJ., CONCUR.**